## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN W. DWYER** | * | |
| 405 S. Atlantic St. | | |
| Melbourne Beach, Florida 32951 | * | |
| | | |
| And | * | |
| | | |
| **CAPITAL FUNDING GROUP, INC.** | * | Case No.: |
| 1422 Clarkview Rd. | | |
| Baltimore, Maryland 21209 | * | |
| | | |
| Plaintiff, | * | |
| | | |
| v. | * | TRIAL BY JURY IS DEMANDED |
| | | |
| **ALAN ZUCCARI** | * | |
| 7712 Carlton Place | | |
| McLean, Virginia 22102 | * | |
| | | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>COMPLAINT</u>

John W. Dwyer ("Dwyer") and Capital Funding Group, Inc., ("CFG"), Plaintiffs, by their undersigned counsel submit this Complaint against Defendant Alan Zuccari ("Zuccari"), and state as follows:

### <u>Introduction</u>

1.     In 2008, Dwyer and Zuccari agreed to invest together in a nursing home venture, which began with the purchase of real properties in Arkansas where nursing homes were located.  Their agreement to do so was never reduced to writing, but they carried out their agreement by directing the use and establishment of various business

entities to act as the vehicles through which their agreement to engage in the nursing home business was achieved.  Initially, the investment venture was effected by Dwyer and Zuccari's creation of a holding company in which neither of them had direct ownership.  Over the next several years, Dwyer and Zuccari made similar oral agreements and extended their individual investment venture, effected in a similar fashion, to acquire additional nursing home real properties, nursing home operations, and nursing home management companies.

2.      The association formed by Dwyer and Zuccari to carry on a business regarding nursing homes, in which Dwyer and Zuccari were co-owners of the venture for profit, was not formed under any statute authorizing the creation of either a corporation, limited liability company, limited partnership, or any form of association for profit other than a partnership.  Dwyer and Zuccari formed their association of two persons to carry on as co-owners of a business for profit regarding nursing homes, which is a partnership, whether or not they intended to form a partnership.

3.      Eventually their investment venture in nursing homes foundered, largely because of professional liability claims against nursing homes in Arkansas and Florida. Dwyer and Zucccari then agreed to exit their nursing home business by directing a liquidation and winding down of various business entities within their venture.  The decision to liquidate and resolve claims was made between Dwyer and Zuccari for their venture.

4.      As part of the wind down of the venture, Dwyer and Zuccari expressly authorized Brian Reynolds ("Reynolds") to negotiate through counsel settlement(s) for

the nursing homes or other alleged debtor(s), regardless of whether sufficient insurance, liquidation proceeds, or retained assets existed to pay the agreed settlements.  Dwyer and Zuccari lacked legal managerial authority over most of the business entities which became defendants or alleged debtors, but became disclosed or undisclosed principals co-obligated for certain settlements of those entities, entered into by their agents with their authorization.

5.      As payments of these settlements agreed to by Dwyer and Zuccari have come due, the liabilities have exceeded the proceeds available from insurance, liquidating assets, and any retained earnings from the venture.  Dwyer, through CFG, has paid the underfunded settlement liabilities that Zuccari agreed to resolve.  This suit seeks reimbursement of Zuccari's share of those payments.

## The Parties

6.      Plaintiff, John "Jack" Dwyer resides in Melbourne Beach, Florida.

7.      Dwyer is the chairman and sole owner of Plaintiff Capital Funding Group, Inc., a Maryland corporation with its principal place of business in Baltimore, Maryland.  CFG provides non-bank financing, investing, and advisory services to the healthcare and multifamily housing industries.

8.      Defendant Zuccari is a resident of Fairfax County, Virginia.  Zuccari does business in Maryland, and specifically did business in Maryland in connection with the allegations contained herein.

9.      Zuccari purposely availed himself of the privilege of doing business in Maryland by investing in and acting as co-owner for approximately eight years of the

venture which is the subject of this suit, and which had and has its principal office in Baltimore.   Zuccari had meetings in Maryland with respect to negotiations and investments in venture assets, and regularly traveled to the principal office in Baltimore to act as a co-owner; his agent regularly traveled there to act on Zuccari's behalf; and, Zuccari and his agent regularly communicated by phone and email with managers of the enterprise at that principal office to make decisions for the venture.   Over eight years, Zuccari and his agent communicated hundreds of times in person, by phone, and by email with managers of the enterprise or his co-owner Dwyer at the principal place of business in Baltimore; no less than 15 of these meetings were in person by Zuccari at the principal place of business from 2012 through 2015.   The agreements reached by Dwyer and Zuccari to invest in nursing homes envisioned continuing and wide-reaching contacts between Zuccari and the State of Maryland at the principal place of business of the enterprise.   This dispute grows directly out of contracts entered into between Dwyer and Zuccari, which had a substantial connection with Maryland because the businesses they agreed to form or acquire would be and were principally managed from Baltimore.   Zuccari knew that when he entered into the contracts and performed as a co-owner.

## Jurisdiction & Venue

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in dispute is more than $75,000.00, exclusive of interests and costs.

11.     Jurisdiction over the defendant is provided by COURTS & JUD. PROC. § 6-103, Maryland Code Ann, the long-arm statute.   Zuccari was doing business in and had

minimum contacts with the State of Maryland with regard to the matters alleged in this Complaint.

12.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

### Facts Common to All Counts

13.    In 2008, Dwyer and Zuccari orally agreed to buy real properties in Arkansas where a number of nursing homes were leased to operators.  To go forward with and implement that agreement, Dwyer and Zuccari caused the formation of a holding company owning a separate single-purpose LLC for each real property.

14.    In furtherance of their overarching agreement, Dwyer caused CFG to re-form Capital Seniorcare Ventures, LLC as Dwyer's vehicle in creating the holding company.  Dwyer, through CFG, contributed all the capital to Capital Seniorcare Ventures, LLC, but Reynolds and Dwight Kouri ("Kouri") were named managers with a 5% interest each.   Dwyer was also a named manager of Capital Seniorcare Ventures, LLC.

15.    In 2008, Zuccari used his company AJZ Capital, LLC ("AJZ Capital") as his investment vehicle to become a 49% member in the holding company, CSCV Arkansas Realty, LLC ("CSCV Arkansas Realty"), in which Capital Seniorcare Ventures, LLC held the remaining 51%.  The managers of CSCV Arkansas Realty were Dwyer, Reynolds, and Kouri.  CSCV Arkansas Realty then purchased 12 real properties where nursing homes were operated, and leased the buildings to the licensed operator.  Those real properties were each titled to separate single-purpose LLCs, which were subsidiaries of CSCV Arkansas Realty.

16.    In 2011, Dwyer and Zuccari agreed to sell the assets of CSCV Arkansas Realty with a substantial profit of more than 137% return on investment, which was distributed for the benefit of Dwyer and Zuccari, respectively.  CSCV Arkansas Realty at that point ceased to be an aspect of the continuing enterprise which is the subject of this suit, and no liability is alleged for CSCV Arkansas Realty.

17.    Dwyer and Zuccari agreed to sell the CSCV Arkansas Realty properties, and in roughly the same time period they orally agreed that they would next invest in the operations of the nursing homes that had leased property from CSCV Arkansas Realty.  Thus, the Dwyer/Zuccari venture went from being the owner/lessor of the real properties to the lessee/operator of the nursing homes located on those properties.

18.    Zuccari owns certain providers of services to the nursing home industry, which meant that an investment in nursing home operations with Dwyer was extremely attractive to Zuccari.  Zuccari owns Alan J. Zuccari, Inc., trading as Hamilton Insurance Agency, which touts itself as one of the nation's leading authorities in providing insurance and risk management services to the senior care industry.  Zuccari also owns Servarus Corp., which provides software-driven risk management services to the senior care industry.  All of the acquisitions of nursing home operations discussed below represented an opportunity for Zuccari to maintain or increase the market share of Hamilton Insurance Agency and Servarus Corp. upon the change of control of those nursing home operations.  Zuccari also leveraged Dwyer's extensive contacts in the senior care industry when selling insurance brokerage and electronic risk management services, frequently touting that he was a partner with Dwyer to prospective customers.

Additionally, Zuccari asked Dwyer on several occasions to solicit new business contacts for Zuccari based on the partnership between the two.

19.     As Dwyer and Zuccari contemplated selling the real property titled to CSCV Arkansas Realty at a large profit, and acquiring the operations that had leased the properties from CSCV Arkansas Realty, the two partners considered the risk to operating success posed by potential professional liability claims arising from the ownership of or affiliation with nursing home operations.  Zuccari was already brokering insurance for the operator of those nursing homes, so the change in control of those operations presented Zuccari with the risk that another broker would compete to serve the new owner.  Zuccari assured Dwyer that he had the knowledge that would allow adequate risk control of the liability claims.

20.     Zuccari's assurances about insurance were an important consideration for Dwyer in agreeing to invest with Zuccari in nursing home operations.  Over the period the two partners invested together in nursing homes, Zuccari's businesses provided insurance brokerage services and risk management services for their nursing homes, and Zuccari fulfilled the co-owner function on these subjects.

21.     Based on Zuccari's assurances, Dwyer agreed to extend their venture by purchasing nursing home operations in Arkansas.  To effect their entry into the operation of nursing homes, Dwyer and Zuccari respectively caused the creation of new LLCs as their investment venture instrumentalities or vehicles.  In 2011, CFG and Reynolds formed CSCV Holdings, LLC, with CFG owning 90% and Reynolds the remainder.  Zuccari formed Arkansas Nursing Home Acquisition, LLC ("ANHA"),

which he solely owned and for which he appointed David Art ("Art") manager with exclusive control.   CSCV Holdings, LLC and ANHA formed Arkansas SNF Operations Acquisition, LLC ("Ark I"), in which CSCV Holdings, LLC owned 51% and ANHA the remainder.  Neither Dwyer, CFG, nor Zuccari was a member or manager of Ark I.

22.     In the ordinary business fashion, the limitation of Ark I's liability extends to its members, and management authority rests with its designated managers, Reynolds and Daniel Baird ("Baird").

23.     In similar fashions, Dwyer and Zuccari caused the following holding companies to be created as the vehicles to carry out their investments in nursing homes. All the holding companies listed below had their principal place of business in Baltimore, sharing an address with CFG.

| Dwyer-controlled Member | Zuccari-controlled Member | Holding Company | Holding Company Managers |
|---|---|---|---|
| a. CSCV Holdings, LLC (51%) | ANHA (49%) | Arkansas SNF Operations Acquisition, LLC | Baird, Reynolds |
| b. CSCV Holdings II, LLC (51%) | ANHA (49%) | Arkansas SNF Operations Acquisition II, LLC | Baird, Reynolds |
| c. CSCV Holdings II, LLC (51%) | ANHA (49%) | Arkansas SNF Operations Acquisition III, LLC | Baird, Reynolds |
| d. CSCV Real Estate Holdings, LLC (51%) | AJZ Capital, LLC (49%) | Arkansas Real Estate Investors, LLC | Baird, Reynolds |
| e. CSCV Consulting, LLC (51%) | ANHA (49%) | SLC Professional Holdings, LLC | Baird, Reynolds |
| f. CSCV Holdings II, LLC (49%) | Montani Investors, LLC (51%) | Lyric Investors, LLC | Reynolds, Baird, Art |
| g. CSCV Real | Montani Real Estate | Lyric Real Estate | Reynolds, Baird, Art |

| Estate Holdings, LLC (49%) | Investors, LLC (51%) | Holdings, LLC | |

24.     In several instances, holding companies established under the control of Dwyer and Zuccari partnered with entities controlled by Tim Nicholson ("Nicholson"), to form subsidiary holding companies, as follows.  All the holding companies listed below had their principal place of business in Baltimore, sharing an address with CFG.

| Dwyer/Zuccari-controlled Member | Nicholson-controlled Member | Holding Company | Holding Company Managers |
|---|---|---|---|
| h. Lyric Investors, LLC (50%) | Ridge Crest Health Care, LLC (50%) | Lyric Health Care, LLC | Reynolds, Baird, Art |
| i. Lyric Real Estate Holdings, LLC (80%) | Bay Front Property, LLC (20%) | Chai Facilities Acquisition Company, LLC | Reynolds, Baird, Art |
| j. Lyric Real Estate Holdings, LLC (80%) | Bay Front Property, LLC (20%) | Chai Facilities Acquisition Company II, LLC | Reynolds, Baird, Art |

Lyric Investors, LLC formed Lyric HC Operations Acquisition, LLC to partner with Ridge Crest Health Care, LLC to create Lyric Health Care, LLC.

25.     Neither Dwyer, CFG, nor Zuccari was a member or manager of any of the preceding holding companies ("Holding Companies"), which were the businesses set up by the partners to invest in nursing homes.

26.     Each of the Holding Companies, in turn, formed or acquired subsidiary companies, some of which in turn formed subsidiaries (collectively, "Subsidiaries"). None of the parties to this suit was a member, manager, or officer of any of the Subsidiaries.

27.     Even though neither Dwyer nor Zuccari is a member, manager, or officer of any Holding Company or Subsidiary, all decisions to invest in, divest from,

distribute to investors, or settle substantial alleged liabilities of any Holding Company or Subsidiary were made jointly by Dwyer and Zuccari as partners, along with Nicholson as applicable.

28.     Ark I was formed on June 15, 2011.  It is a Holding Company formed to own Subsidiaries which own the operations of licensed nursing homes in the State of Arkansas.

29.     SLC Professional Holdings, LLC was re-formed January 1, 2012.  It is a Holding Company re-formed to own Subsidiaries which provided consulting services to operators of licensed nursing homes and assisted living facilities.

30.     Arkansas SNF Operations Acquisition II, LLC was formed September 27, 2011.  It is a Holding Company formed to own Subsidiaries which own the operations of licensed nursing homes in the State of Arkansas.

31.     Arkansas SNF Operations Acquisition III, LLC was formed March 11, 2013.  It is a Holding Company formed to own Subsidiaries which own the operations of licensed nursing homes in the State of Arkansas.

32.     Arkansas Real Estate Investors, LLC was formed May 3, 2011.  It is a Holding Company formed to own Subsidiaries which own real property leased to operators of licensed nursing homes in the State of Arkansas.

33.     The Holding Company and their Subsidiaries referred to in ¶¶ 28-32 are collectively referred to as "Arkansas."

34.     Lyric Investors, LLC was formed July 13, 2012.  It is a Holding Company formed to own another Holding Company, Lyric HC Operations Acquisition, LLC, which is a 50% owner of Lyric Health Care, LLC.

35.     Lyric Health Care, LLC was formed May 28, 1997.  Its operating agreement was amended and restated on December 1, 2012.  It is a Holding Company formed to own Subsidiaries which own the operations of licensed nursing homes outside the State of Arkansas.

36.     Lyric Real Estate Holdings, LLC was formed July 17, 2012.  It is a Holding Company formed to invest in Holding Companies which own real property leased to operators of licensed nursing homes outside the State of Arkansas.

37.     Chai Facilities Acquisition Company, LLC was formed December 1, 2012. It is a Holding Company formed to own Subsidiaries which own real property leased to operators of licensed nursing homes outside the State of Arkansas.

38.     Chai Facilities Acquisition Company II, LLC was formed December 1, 2012.  It is a Holding Company formed to own Subsidiaries which own real property leased to operators of licensed nursing homes outside the State of Arkansas.

39.     The Holding Companies Lyric Investors, LLC; Lyric Health Care, LLC; Lyric Real Estate Holdings, LLC; Chai Facilities Acquisition Company, LLC; and, Chai Facilities Acquisition Company II, LLC, and their Subsidiaries, are collectively referred to as "Lyric."   Lyric was an investment entered into by Dwyer and Zuccari with Nicholson, based on the respective ownership percentages stated in ¶ 23 and ¶ 24.

40.     Nicholson obtained an express, oral agreement when investing with Dwyer and Zuccari in Lyric that Nicholson's personal liability would be limited to his initial capital contribution made through his business entity.  Dwyer and Zuccari never agreed to or discussed any such a limitation running between the two of them for their partnership in nursing homes.

41.     Dwyer and Zuccari invested in Lyric as a result of Zuccari soliciting Dwyer's participation, including the use of their partnership's principal place of business in Baltimore, and the use of Dwyer's agents Reynolds, Baird and others who operated from the partnership's principal place of business in Baltimore.  Zuccari was already providing insurance to the prior operator of the Lyric nursing homes, and so the sale of those nursing homes presented another risk to Zuccari's businesses upon a change of control if Dwyer and Zuccari did not take a controlling interest in Lyric, as well as an easy opportunity to sell his electronic risk management services upon acquisition of Lyric.

42.     Before Dwyer and Zuccari invested in the nursing homes referred to here as Lyric, those homes were managed under the control of Nicholson in Columbia, Maryland.  Zuccari knew this before investing in Lyric.  Before the Lyric management in Columbia was consolidated with the Arkansas management structure in Baltimore, Zuccari and his agent communicated with Lyric management in Columbia, Maryland in person, by phone, and mail.

43.     The operations of the Arkansas nursing homes, Lyric nursing homes, and management companies did not in the aggregate generate a profit over time, so Dwyer and Zuccari decided to exit the nursing home business together.

44.     In mid-2014, Zuccari and Dwyer, along with Nicholson as applicable, made the decision to wind down their investments in Arkansas and Lyric, due in part to ongoing and increasing lawsuits brought by some residents alleging malpractice related to care within certain facilities (collectively, "Professional Liability").  These lawsuits and other liabilities led to net losses from Arkansas and Lyric, but not net losses for every Subsidiary.

45.     Some of the Professional Liability suits alleged the personal liability of Dwyer, CFG, Zuccari, ANHA, and/or AJZ Capital, though none of these entities personally rendered care to nursing home residents.  Each of these people and entities has vigorously defended accusations of personal liability for Professional Liability claims.

46.     Professional Liability suits were progressing to resolution, sometimes for settlement in groups.  Reynolds, at the direction of Dwyer and Zuccari, was responsible for the management of defending and settling Professional Liability claims.  Whenever settlements were achieved for substantial sums of money, Dwyer and Zuccari alone, along with Nicholson for Lyric, made the decision to settle them, and then Reynolds was given instructions by the partners to resolve them.  Dwyer and Zuccari made these decisions on behalf of their partnership and did not exercise the authority of designated managers to settle these claims on behalf of the Holding Companies and Subsidiaries.

Settlements were entered into for an aggregate of millions of dollars.  Insurance was not adequate to pay all the settlements in full, a fact known to Zuccari as he managed insurance for the venture.  Despite the separateness of each individual entity, with respective limitations of liability and appointed management, Dwyer and Zuccari agreed to personally exercise the owners' control over these settlements.

47.     Zuccari was likewise aware when the depletion of insurance coverage required the payment of defense counsel from other assets.  Dwyer and Zuccari agreed to fund the defense of litigation with asset liquidations, retained assets, and additional personal contributions as needed.  With knowledge that insurance coverage was not always adequate to fully pay for the defense of Professional Liability, Dwyer and Zuccari caused Reynolds to retain and manage defense counsel, without exercising managerial authority over the legal entities Dwyer and Zuccari created or acquired. Payment for defense counsel and settlements for certain entity liabilities was approved by Dwyer and Zuccari for payment from assets of another entity in their venture resulting from the wind down, until such assets were depleted.

48.     During the course of liquidation, one payment was made to the investors in February 2016 from the sale of real property from certain Lyric Subsidiaries.  The bulk of the sale proceeds were devoted to paying operating expenses or reserved to pay Professional Liabilities of other entities within Lyric, as had been the custom approved by Dwyer and Zuccari. Zuccari, Dwyer, and Nicholson also agreed to pay out the gross amount of $7 million allocated according to their respective partnership interests in Lyric real estate.  In Zuccari's case, his gross share of $7 million was $2,856,000.00.

14

49.     Zuccari agreed with Dwyer and confirmed immediately prior to the February 2016 payment that when additional funds were needed to satisfy liabilities allocable to their respective partnership interests, each of them would repay their respective share of the February 2016 payment back to the partnership.  Nicholson made the same agreement.  Based on this representation, Dwyer and Nicholson allowed a payment to be made to Zuccari in February 2016 in the gross amount of $2,856,000.

50.     Zuccari personally made the agreement to return the conditional payment if needed, and not as the agent or manager for a disclosed principal.

51.     The funds conditionally distributed from the sale of Lyric assets were netted down by a debt Zuccari owed for an investment in New Port Ritchey (which was not part of Lyric or Arkansas), and by a debt owed within Ark I.  The net distribution was increased by Dwyer's purchase of Zuccari's interest in a raw land Subsidiary owned by Arkansas Real Estate Investors, LLC, and for payment to a company Zuccari owned which provided services to Arkansas and Lyric.

52.     The proceeds of the Lyric real property sales from which the conditional payment in February 2016 was derived were held in a bank account of Chai Facilities Acquisition Company, LLC.  The process of netting non-Lyric debits and credits against these proceeds to be distributed to the Lyric partners shows that the partners were treating these proceeds as partnership assets, and no longer Lyric assets, as the partners had the right to do.  Zuccari was asked to elect the recipient of his conditional payment, and he chose AJZ Capital.

53. The process of netting the gross distribution against the rights and obligations of various Zuccari entities does not obscure the fact that Zuccari personally agreed to return the payment to fund his share of the nursing home venture debts if and when needed.

54. Dwyer has paid partnership liabilities greatly in excess of his share of this conditional payment, and the amount of Dwyer's unreimbursed payments allocable to Zuccari's partnership interest exceeds Zuccari's share of the conditionally paid $7 million.

55. When insurance proceeds proved inadequate to fund Professional Liabilities, Dwyer and Zuccari agreed to use the proceeds from the liquidation of Arkansas and Lyric assets to pay their settlements, as mentioned previously. The liabilities paid were generally unrelated to the asset proceeds which were used to pay any given liability—other than they were all within the partnership venture. For example, proceeds from the sale of a real property Subsidiary might be used to pay Professional Liabilities incurred by a nursing home Subsidiary, or to pay vendors for services or goods provided to other Subsidiaries. Operating revenues were used in the same ways.

56. In January 2017, Zuccari was presented by Reynolds with the settlement of a group of Professional Liability cases, and a capital call for funds to pay the settlement. Reynolds' email reiterated that the February 2016 distribution was made "with the expectation that some or all of that capital would need to be put back in to handle the wind down."

16

57.     The capital call included with the proposed January 2017 settlement made clear that the Lyric investment lacked enough insurance or assets to fund the settlements.  Zuccari agreed with the need to settle the cases but said that he did not then have money to fund them.  As agreed to by Zuccari, Dwyer and Nicholson, those Lyric professional liability cases were settled.

58.     When the partners approved settlements and instructed Reynolds to proceed with each settlement, contracts were formed with third parties to settle and pay the liabilities.  The partners were disclosed or undisclosed principals, with the liability of principals for the contracts entered into by their agent.  The partners have liability for the settlements they entered into, and have the liability of one partner to another for payments of partnership debts.  Zuccari's acceptance of the settlements is an acknowledgement of personal liability, even as he identified his own liquidity problem when agreeing to one group of settlements in January 2017.

59.     Zuccari's consent to personal liability was determined by his consent to every settlement he weighed in.  Other than as a co-owner and partner with Dwyer, Zuccari had no authority to act on behalf of the nursing home entities within the venture.

60.     By May 1, 2017 the Arkansas and Lyric nursing homes lacked sufficient retained assets to make the settlement payments and defense costs for those settlements Zuccari had agreed to in January 2017 and before, and after.  On May 1, 2017 CFG made the first of a number of wire transfers to operating accounts for Arkansas or Lyric to fund settlements agreed to by Dwyer and Zuccari.  As of the date of this Complaint,

Dwyer has caused CFG has to pay approximately $7,300,000.00 to fund settlements and defense costs agreed to by Zuccari.  According to his ownership percentage in the partnership, Zuccari has incurred approximately $3,600,000.00 in partnership liabilities to Dwyer for settlement payments and defense costs Dwyer caused CFG to make.

61.     Subsequent to the cessation of his contributing to the payment of the settlements Zuccari agreed to, he continued to agree to additional settlements through at least December 2017.

62.     In each instance, Dwyer has paid these partnership liabilities by causing CFG to transfer funds to operating accounts of Holding Companies to fund these liabilities.  Dwyer has deployed CFG as his agent to make payments for his benefit, subject to this control, and has borrowed personally to infuse cash into CFG to make the payments.  Dwyer is the sole owner and source of the capital of CFG, and he has both contributed money to and retained money in CFG to make the partnership payments. As a result, Dwyer is personally harmed by the payment of partnership liabilities by CFG, which he solely owns.

63.     Since January 2017, Zuccari has rebuffed calls to fulfill his share of partnership liability he agreed to incur.  Prior to that, Zuccari had fulfilled funding calls, sometimes in the form of loans to the venture, knowing that the venture was not likely to repay the loans.

64.     Despite prior representations, agreements, and the course of dealing, and further in the face of demands for payment, Zuccari has put his economic self-interest before his obligations and refused to either return the cash he received from the venture

in February 2016, or to contribute additional funds to satisfy the payment of liabilities he and Dwyer agreed to incur.

65.    Cash from the individual entities was generally pooled in accounts controlled by the Holding Companies, and then disbursed as needed either within or beyond the Holding Company which generated the cash.  This resulted from decision-making by Dwyer and Zuccari at the partnership level, not at the Holding Company or Subsidiary level, where they lacked the authority to act.  This financial control was exercised at the principal place of business in Baltimore.

66.    The reporting and course of conduct among the principals reveals that Dwyer and Zuccari exercised top-level control of their enterprise, and their course of conduct establishes the basic terms of their partnership agreement, including an agreement to settle and fund certain expenses and claims that arose at one of the entities formed by the partnership, despite there being no direct liability of the partnership itself.  The Holding Companies and Subsidiaries exercised day-to-day control and contracted with third parties at arms-length, but for settlements of substantial size and Professional Liability defense costs, Dwyer and Zuccari acted as the owners of the enterprise and agreed to fund such claims and expenses, after execution of contracts by Holding Companies and Subsidiaries that they could not entirely fulfill with insurance, asset liquidations, or retained assets.  The partners are liable for the contracts which they agreed to pay for and that they caused the Holding Companies and Subsidiaries to enter into without the expectation that the Holding Companies and Subsidiaries could fulfill them in full.

67.     Zuccari continues to refuse to fund the settlements and other obligations within the partnership by remitting the amount conditionally paid to him in February 2016, or contributing additional monies to satisfy the obligations of Arkansas and Lyric he agreed to incur.  As a result and proximate cause of Zuccari's refusal to do so, Dwyer has contributed approximately $7,300,000 to fund liabilities, with another approximated $320,000 to be paid for settlements agreed to by Zuccari.

68.     Dwyer and Zuccari acted as co-owners of a business or businesses for profit.

69.     Dwyer and Zuccari, through their investment venture, intended to share any profits in the agreed percentages stated for the respective Holding Companies in ¶ 23 and ¶ 24.  The Holding Companies would distribute any profits to entities which existed for the benefit of Dwyer or Zuccari respectively, entities over which each man respectively had ownership control.

70.     Dwyer and Zuccari formed an association of two persons to carry on as co-owners of a business for profit regarding nursing homes, which is a partnership, whether or not they intended to form a partnership.

71.     The association formed by Dwyer and Zuccari to carry on a business regarding nursing homes was not formed under any statute authorizing the creation of either a corporation, limited liability company, limited partnership, or any form of association for profit other than a partnership.

72.     The partnership formed by Dwyer and Zuccari to carry on a business regarding nursing homes was either oral or implied.

73.     The partnership formed by Dwyer and Zuccari to carry on a business regarding nursing homes was at will, with no provisions for termination at the end of a definite term or upon the completion of a particular undertaking.

74.     The partnership formed by Dwyer and Zuccari could have been performed in less than one year, either by completion of a particular undertaking (e.g., the sale of all assets controlled by the partnership) or termination.

75.     The partnership's principal office was in Baltimore, Maryland, where offices were maintained by Dwyer, Reynolds, and Baird, the Holding Companies were located, and financial control of the partnership was exercised.

## Count I
## Zuccari Liability to Dwyer for Breach of Contract – Conditional Payment

76.     Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77.     Zuccari expressly and personally promised to Dwyer to return as much of the gross conditional payment of $2,856,000.00 made in February 2016 if, as, and when needed to fund ongoing agreed debts of the entities within the partnership venture. Such agreement is a valid and binding agreement between Zuccari and Dwyer.

78.     Use of the funds comprising the conditional payment during such time as the partnership did not immediately need the funds constitutes adequate consideration for Zuccari to enter into the contract to receive and return the funds as needed.

79.     The condition of additional obligations to fund the partnership has occurred, in total amounts exceeding $2,856,000.00.

80.     Zuccari has not returned any portion of the conditional payment, despite demand therefor.

81.     Zuccari is in breach of his promise and agreement to return the conditional payment.

82.     Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

83.     Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's breach of the conditional payment agreement.

WHEREFORE, Dwyer requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of $2,856,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

### Count II
### Zuccari Liability to Dwyer for Breach of Partnership Agreement

84.     Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85.     The partnership of Dwyer and Zuccari is an unincorporated association of two or more persons to carry on as co-owners a business for profit.  The partnership's principal place of business is in Baltimore, Maryland.

86.     Each partner agreed to participate in the partnership and share in profits and losses according to their indirect ownership interests in the Holding Companies.

87.     The partnership agreement is oral and implied, and is a valid agreement between Dwyer and Zuccari.

88.     The partnership has incurred liabilities by agreement of Dwyer and Zuccari in excess of its liquid assets immediately available to pay those liabilities, and it may incur additional liabilities in the future.

89.     Zuccari has breached his obligation to the partnership to fund the liabilities he agreed to, while Dwyer has funded the liabilities.

90.     Zuccari is liable to Dwyer under general partnership law and Md. Code Ann., Corps. & Assns. § 9A-401 *et seq.*, or equivalent law in other states.

91.     Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

92.     Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's breach of the partnership agreement.

93.     Zuccari is liable for his proportionate share of partnership liabilities which he has not paid, in an amount in excess of $75,000.00, inclusive of the $2,856,000.00 due for the specific breach alleged in Count I.

WHEREFORE, Dwyer requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of more than $75,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

### Count III
### Zuccari Liability to Dwyer for Detrimental Reliance/Promissory Estoppel – Partnership Settlements

94.     Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     Zuccari made clear and definite promises to fund the partnership settlements to the extent of his ownership interest.

96.     Zuccari reasonably expected that his promise to fund partnership settlements would induce Dwyer to agree to the agreed-upon settlements, and to fund them, as each of them has previously funded their respective interests until Zuccari ceased to perform.

97.     Zuccari's promise and agreement to resolve certain agreed-upon vendor claims, defense costs, and settlements induced actual and reasonable performance by Dwyer, who agreed to also be responsible for and pay the additional claims.

98.     Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

99.     Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's failure to perform his promise.

100.    The resulting detriment to Dwyer from Zuccari's incomplete performance can only be avoided by enforcing Zuccari's performance of his promise to pay his share.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of more than $75,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

**Count IV**
**Zuccari Liability to Dwyer for Detrimental Reliance/Promissory Estoppel –**
**Conditional Payment**

101.    Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102.     Zuccari made a clear and definite promise to Dwyer to return the conditional payment as needed to pay Arkansas and Lyric liabilities that arose within the venture.  Zuccari's agreement to Dwyer was a valid and binding promise.

103.     Zuccari reasonably expected that his promise to return the conditional payment as needed to pay Arkansas and Lyric liabilities would induce Dwyer to agree to approving the conditional payment to Zuccari in 2016.

104.     Zuccari's promise induced actual and reasonable performance by Dwyer in approving and allowing the conditional payment to be made to Zuccari's company at his direction.

105.     Additional Arkansas and Lyric debts came due that Dwyer and Zuccari had agreed to cause to be satisfied, which triggered the obligation of Zuccari to return the conditional payment for the purpose of satisfying such agreed-upon debts.  Dwyer made demand on Zuccari for repayment of the conditional payment.  Zuccari refused to remit any amounts that he received from the conditional payment in response to Dwyer's demands.

106.     Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

107.     Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's failure to perform his promise.

108.     The resulting detriment to Dwyer from Zuccari's failure to refund the net conditional distribution, including the complete funding of the agreed-upon claims, can only be avoided by enforcing Zuccari's performance of his promise.

WHEREFORE, Dwyer requests that judgment be entered in his favor against Zuccari in the amount of $2,856,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

**Count V**
**Zuccari Liability to Dwyer for Equitable Contribution for Partnership Debts**

109.    Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.    Dwyer and Zuccari are partners in the ownership of the Arkansas and Lyric ventures.

111.    Zuccari and Dwyer as partners are jointly and severally liable for the debts of the partnership that they incurred by agreeing to settle liabilities with certain third parties.

112.    Dwyer has paid those debts that he and Zuccari agreed to incur as partners, for which Zuccari is jointly and severally liable.

113.    Zuccari is liable for equitable contribution to Dwyer for Zuccari's share of the debts the partnership incurred by agreeing to settle liabilities with third parties which Dwyer alone has paid.

114.    Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

115.    Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's failure to contribute his equitable share of the liabilities.

116.     Zuccari is liable to Dwyer under general partnership law and Md. Code Ann., Corps. & Assns. § 9A-401 *et seq.*, or equivalent law in other states.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of more than $75,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

### Partnership Count VI
### Unjust Enrichment

117.     Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

118.     Dwyer has paid debts which Zuccari is liable for by agreement and/or law.

119.     Dwyer's payments have conferred on Zuccari a benefit equal in amount to Zuccari's liability for those debts.

120.     Zuccari was aware of and had knowledge of the benefits Dwyer conferred on him.

121.     Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

122.     Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's retention of those benefits without payment of their value.

123.     Zuccari's acceptance and retention of the benefits of Dwyer's payments make it inequitable for Zuccari to retain those benefits without payment of their value.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of more than $75,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

## Count VII
## Zuccari Breach of Contract Liability to Dwyer

**124.**   Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.   Dwyer and Zuccari entered valid and binding agreements to incur liability for the defense and settlement of certain Professional Liability claims.

126.   Zuccari has materially breached those agreements to incur liability for the defense and settlement of certain Professional Liability claims.

127.   Dwyer has caused CFG as his agent to make the payments for which Zuccari is liable.

128.   Dwyer has suffered damages and continues to suffer damages as a direct and proximate result of Zuccari's breach of contract.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of more than $75,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

## Count VIII
## Zuccari Subrogated Liability to CFG

129.   Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

130.    The debts paid by Dwyer that were agreed to by Dwyer and Zuccari are debts of both Dwyer and Zuccari personally as partners.

131.    CFG has paid, under the control of and for the benefit of Dwyer, certain debts of the partnership for settlements Dwyer and Zuccari agreed to.  CFG was neither a volunteer nor an intermeddler, and it has paid or discharged the debts of Dwyer and the partnership under such circumstances as in equity entitle CFG to reimbursement to prevent unjust enrichment of Zuccari.

132.    CFG asserts its rights to subrogation under the same conditions and limitations as are binding on Dwyer.

WHEREFORE, CFG requests that judgment be entered in his favor against Zuccari and damages awarded in the amount of more than $75,000.00, plus interest, fees and costs, and such other and further relief as the Court deems appropriate.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

## JURY TRIAL DEMAND

Trial by jury of all issues triable by jury in this Complaint is demanded.

Respectfully submitted,

*/s/ Gardner M. Duvall*
Kevin G. Hroblak (Bar No. 26180)
Gardner M. Duvall (Bar No. 09823)
Michael P. Collins, Jr. (Bar No. 20805)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
khroblak@wtplaw.com
gduvall@wtplaw.com
mcollins@wtplaw.com

*Attorneys for John W. Dwyer*