IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAPITAL FUNDING GROUP, INC., | * | |
| Plaintiff, | * | Civil Action No. RDB-19-1272 |
| v. | * | |
| ALAN ZUCCARI, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| AJZ CAPITAL, LLC, | * | |
| Plaintiff, | * | Civil Action No. RDB-19-3632 |
| v. | * | |
| JOHN W. DWYER, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

These consolidated cases arise from the fallout of a nursing home business enterprise involving John Dwyer, Alan Zuccari, and their series of holding companies and subsidiaries, including Capital Funding Group, Inc., AJZ Capital, LLC, and CSCV Real Estate Holdings, LLC. The Court has disposed of the parties' motions to dismiss and for summary judgment, and a bench trial is scheduled to begin on September 13, 2021. (Civil No. RDB-19-1272, ECF No. 245; Civil No. RDB-19-3632, ECF No. 219.) That trial will address Capital Funding Group, Inc.'s claim for unjust enrichment against Alan Zuccari, individually, in addition to AJZ Capital, LLC's claims for breach of fiduciary duty against CSCV Real Estate Holdings,

1

LLC, conversion against John Dwyer and Brian Reynolds, individually, and aiding and abetting against CSCV Real Estate Holdings, LLC.

Presently pending are the following identical motions: Alan Zuccari's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-1272 (ECF No. 203) and AJZ Capital, LLC's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-3632 (ECF No. 180). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Alan Zuccari's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-1272 (ECF No. 203) and AJZ Capital, LLC's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-3632 (ECF No. 180) are DENIED WITHOUT PREJUDICE.

## BACKGROUND

As this Court has already issued a number of written opinions in this case, the Court includes only a short summary of the relevant allegations here. (*See* Civil No. RDB-19-1272, ECF Nos. 17, 241; Civil No. RDB-19-3632, ECF Nos. 20, 215.) These consolidated cases arise from a failed nursing home business enterprise involving John "Jack" Dwyer ("Dwyer"), Alan Zuccari ("Zuccari"), and a host of business entities they allegedly controlled.[1] In Civil Action Number RDB-19-1272, one claim by Capital Funding Group, Inc. ("CFG") for unjust enrichment remains against Defendant Alan Zuccari, individually, as a result of this Court's granting a motion to dismiss all other claims. In Civil Action Number RDB-19-3632, also as

---

[1] For ease of reference, the Court will refer to John Dwyer, Brian Reynolds, Capital Funding Group, Inc., and CSCV Real Estate Holdings, LLC as the "Dwyer parties" and will refer to Alan Zuccari and AJZ Capital, LLC as the "Zuccari parties."

a result of a previous ruling from this Court, three claims brought by AJZ Capital, LLC ("AJZ Capital") remain: breach of fiduciary duty against Defendant CSCV Real Estate Holdings, LLC ("CSCV Real Estate"); conversion against Defendants John Dwyer and Brian Reynolds, individually; and aiding and abetting against Defendant CSCV Real Estate.

On March 26, 2021, this Court confirmed the parties' agreement to waive a jury trial in these cases and to proceed with a bench trial on the remaining claims. (Civil No. RDB-19-1272, ECF No. 245; Civil No. RDB-19-3632, ECF No. 219.) The presently pending Motion in Limine to Exclude Testimony of R. Christopher Rosenthal, filed by the Zuccari parties, is the sole remaining pretrial motion. (Civil No. RDB-19-1272, ECF No. 203; Civil No. RDB-19-3632, ECF No. 180.) The Dwyer parties have identified R. Christopher Rosenthal ("Mr. Rosenthal") as their expert on damages. Mr. Rosenthal is a Managing Member and partner of Vallit Advisors, a dispute consulting and forensic accounting firm. (Rosenthal Resume, Exhibit 1, Appendix A.[2]) He has produced three expert reports in Civil Action Number RDB-19-1272: the "Rosenthal Report" (Exhibit 1), the "Rebuttal Rosenthal Report" (Exhibit 2), and the "Amended Rebuttal Rosenthal Report" (Exhibit 3). Mr. Rosenthal has also produced an expert report in Civil Action Number RDB-19-3632: the "Rosenthal Vero Report" (Exhibit 5). In forming his forensic accounting opinions, Mr. Rosenthal assumed a finding of liability, but offered no legal opinion on the determination of liability. (Rosenthal Report at 1, 12, Exhibit 1.) The pertinent expert testimony proposed in each case is addressed below.

I. **Case No. RDB-19-1272**

---

[2] The cited Exhibits are the Zuccari parties' exhibits attached to their Motion in Limine, the majority of which were filed under seal.

In Civil Action Number RDB-19-1272, CFG seeks to hold Zuccari individually liable for professional liability settlements, expenses, and vendor fees incurred by a variety of nursing home businesses managed and operated by CFG and its subsidiaries and affiliates. Dwyer and CFG's original theory of liability was based on an alleged "oral partnership" formed between Dwyer and Zuccari. (*See* Compl., ECF No. 1.) On March 19, 2020, this Court rejected Dwyer's partnership theory and dismissed all claims brought by Dwyer and CFG against Zuccari except for the unjust enrichment claim brought by CFG (Count IX). (March 19, 2020 Memorandum Opinion and Order in RDB-19-1272, ECF Nos. 17, 18.) In its March 17, 2021 Memorandum Opinion, this Court explained that the unjust enrichment claim survived summary judgment because there exist genuine disputes of material fact as to the validity of the following obligations and whether Zuccari was unjustly enriched by CFG's payments: (1) (1) Zuccari's promise to repay the respective share of the February 2016 payment back to the partnership; (2) Zuccari's contractual liability to various settling parties based on his status as a "disclosed or undisclosed principal" who authorized the representative of the LLCs to settle malpractice claims; and (3) Zuccari's liability as a party to the settlements themselves, in cases in which he was named as party. (ECF No. 241 *SEALED*.) The Court further reiterated that the unjust enrichment claim is not dependent on the existence of a partnership and is properly asserted as a quasi-contractual claim in the absence of an explicit agreement between Dwyer and Zuccari. (*Id.*)

The Dwyer parties seek to offer Mr. Rosenthal as an expert witness to testify regarding the tracing of funds from CFG's bank accounts to various nursing home settlements, vendors, and attorneys that are the subject of CFG's unjust enrichment claim. Specifically, Mr.

4

Rosenthal's expert reports analyze the payments that CFG allegedly made to the following nursing home holding companies to facilitate the settlement of professional liability lawsuits: Arkansas SNF Operations Acquisitions, LLC, ("Ark I"), Arkansas SNF Operations Acquisition II, LLC ("Ark II"), and Lyric Investors, LLC ("Lyric").[3] He reviewed and analyzed the financial records of these holding companies for a period of nearly four years, including the review of thousands of check register entries, hundreds of bank statements, thousands of pages containing email communication detailing the financial matters of the holding companies, and dozens of invoices for vendor services and legal services related to defending the nursing home entities. (*See* Rosenthal Report, Exhibit 1; Amended Rebuttal Rosenthal Report, Appendix D, Exhibit 3.) In addition, Mr. Rosenthal provided an explanation for the "cross-funding" that occurred between the various entities owned by Dwyer, Zuccari, and their respective Limited Liability Companies ("LLCs"). (*See* Rosenthal Report at 5-7, Exhibit 1; Amended Rebuttal Rosenthal Report at 13-14, Exhibit 3.)

In determining Zuccari's liability for the payments made by CFG, Mr. Rosenthal apportioned the payments based on Zuccari's ownership interest in the respective nursing home entities. (Rosenthal Report at 9-11, Exhibit 1.) In his Rebuttal Report, he analyzed the monthly revolving balances of the holding companies within the Dwyer and Zuccari nursing home investment, concluding that, but for CFG's cash contributions, the monthly payments from these holding companies exceeded the monthly deposits. (Amended Rebuttal Rosenthal

---

[3] CFG alleges that Ark I was formed from two LLCs: Arkansas Nursing Home Acquisition, LLC ("ANHA") (controlled by Zuccari) and CSCV Holdings, LLC (controlled by CFG and Brian Reynolds). (Am. Compl. ¶ 21.) Ark II was formed from ANHA and CSCV Holdings II, LLC (controlled by CFG and Reynolds). (*Id.* ¶ 23.) Finally, Lyric was formed from Montani Investors, LLC (controlled by Zuccari) and CSCV Holdings, II, LLC. (*Id.*)

5

Report at 6-7, 10-11, Exhibit 3.)  Ultimately, Mr. Rosenthal opined that, if Zuccari is found individually liable, he owes CFG $4,493,812 in damages.  (*Id.* at 16.)

## II. Case No. RDB-19-3632

In Civil Action Number RDB-19-3632, AJZ Capital seeks to hold Defendants John Dwyer, Brian Reynolds, and CSCV Real Estate liable for issues relating to one specific nursing home enterprise in Massachusetts, known as the "Vero Deal."  The "Vero Deal" refers to a purchase of an assisted living facility in Massachusetts by a private real estate investment trust ("REIT") named CSV MA Real Co. Holdings, LLC ("CSV MA"). (Am. Compl. ¶ 46, ECF No. 43.) CSV MA has several members, including AJZ Capital (99% owned by Zuccari) and CSCV Real Estate. (*Id.* ¶ 14.)  The "Operating Member" of CSV MA is CSCV Real Estate, whose members are Defendant Brian Reynolds and CFG, Inc. (*Id.* ¶ 13.)  AJZ Capital made a capital contribution of $111,595.00 to CSV MA for the purpose of facilitating the Vero Deal. (*Id.* ¶¶ 3, 47.)  In January 2017, the Board of Directors of CSV MA—which included Dwyer and Reynolds—dissolved and liquidated CSV MA by selling the real property and other assets that had been purchased in the Vero Deal. (*Id.* ¶¶ 48-49.)  The proceeds of the sale were held for six months and, in mid-2017, they were distributed in a manner that AJZ Capital alleges was not authorized by the Operating Agreement.  (*Id.* ¶ 51.)  AJZ Capital was allegedly entitled to receive a distribution of approximately $334,803, but this distribution was never made. (*Id.* ¶ 51.)  AJZ Capital asserts that Dwyer and Reynolds, acting through CSCV Real Estate and CSV MA, caused the distributions owed to AJZ Capital to be misappropriated. (*Id.* ¶ 52.)

The Dwyer parties seek to offer Mr. Rosenthal to testify regarding the amount which should be "set off" against the amount AJZ Capital asserts it is owed from the liquidation of

6

CSV MA.  Specifically, Mr. Rosenthal analyzed the damages allocable to AJZ Capital and determined that the damages sustained by CFG for payments on unfunded liabilities in Ark I, Ark II, and Lyric exceed the value of AJZ Capitals' interest in the sale of the Vero properties. (*See* Rosenthal Vero Report at 14-15, Exhibit 5.)  He explained:

> Based on the documentation provided, AJZ Capital's interest in the proceeds from the sale of the Vero Properties is less than the amount the Defendants [CSCV Real Estate, Dwyer, and Reynolds] assert as an offset for CFG's funding of outstanding liabilities for the joint investment venture, including the portion of liabilities allocated to Zuccari's share of the investment venture, and is less than the conditional payment received by AJZ Capital in February 2016 from the joint investment venture.

(*Id.* at 15.)

## STANDARD OF REVIEW

Rules 702 through 704 of the Federal Rules of Evidence govern the admissibility of expert opinions at trial.  Rule 702 provides that an expert witness may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A court's role in applying Rule 702 is to act as a gatekeeper, excluding unreliable expert testimony.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (holding that *Daubert*'s gatekeeping obligation applies not only to scientific testimony but to all expert testimony).

In determining whether proffered expert testimony is reliable, the district court has broad discretion to consider whatever factors bearing on validity that the courts finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved, and no single factor is necessarily dispositive. *See Kumho Tire*, 526 U.S. at 152-53. "The court, however, should be conscious of two guiding, and sometimes competing, principles: (1) 'that Rule 702 was intended to liberalize the introduction of relevant expert evidence'; and (2) 'that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading.'" *United States v. Hammoud*, 381 F.3d 316, 337 (4th Cir. 2004), *vacated on other grounds*, 543 U.S. 1097 (2005), *reinstated in part*, 405 F.3d 1034 (4th Cir. 2005) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)).

The proponent of expert testimony bears the burden of production to come forward with evidence to support its contention that an expert's testimony would be both reliable and helpful. *See Bourjaily v. United States*, 483 U.S. 171 (1987). The Supreme Court in *Daubert* reminded district courts, however, that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Moreover, the United States Court of Appeals for the Fourth Circuit has held that "[a] court need not

8

determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Westberry*, 178 F.3d at 261.

## ANALYSIS

The Zuccari parties seek to exclude the testimony of the Dwyer parties' expert, R. Christopher Rosenthal, arguing that: Mr. Rosenthal's proposed testimony is irrelevant and unfairly prejudicial under Rules 401, 402, and 403 of the Federal Rules of Evidence; the testimony will not help the trier of fact to understand the evidence as is required for expert testimony; and the testimony is fact testimony requiring no expertise.

### I. Mr. Rosenthal's testimony is relevant and is not unfairly prejudicial.

The Zuccari parties assert that Mr. Rosenthal's testimony is irrelevant because it is based on the partnership theory that this Court has already rejected. According to the Zuccari parties, "[t]he fact that the alleged partnership was found to not exist renders irrelevant any opinions that assume its existence or discuss its terms, such as any alleged allocation of the Arkansas and Lyric expenses." (Civil No. RDB-19-1272, Motion in Limine at 13, ECF No. 203-1.) Mr. Rosenthal's calculations are based on the purported ownership interests of the Zuccari parties in the alleged partnership with the Dwyer parties, with the Zuccari parties responsible for 49% of the expenses for the Ark I and Ark II entities, and 51% of the expenses for the Lyric entity. (*See* Rosenthal Dep. Tr. at 77:14-80:19, ECF No. 203-7; Rosenthal Vero Report at 87-90, Exhibit 5.)) The Zuccari parties maintain that, absent a partnership between

9

Zuccari and Dwyer, these percentages are irrelevant and would be highly misleading and prejudicial.

Contrary to the Zuccari parties' objections, Mr. Rosenthal's calculations do not rise and fall on the existence, or lack thereof, of a partnership between Zuccari and Dwyer. As this Court has already explained in its Memorandum Opinion denying summary judgment on CFG's unjust enrichment claim, the unjust enrichment claim is a quasi-contractual claim that may be asserted in the absence of an explicit agreement. (Civil No. RDB-19-1272, ECF No. 241 at 10-11.) This case is marked by a dearth of written documentation for many of the interactions between Dwyer and Zuccari, and the absence of a legal partnership between the two does not preclude the parties from recovering losses pursuant to an unjust enrichment theory, which is not dependent on the existence of a partnership. (*Id.* (citing *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600, 607 (2000)).) In denying summary judgment, this Court explained that there are genuine disputes of material fact as to the validity of the following obligations: (1) Zuccari's promise to repay the respective share of the February 2016 payment back to the partnership; (2) Zuccari's contractual liability to various settling parties based on his status as a "disclosed or undisclosed principal" who authorized the representative of the LLCs to settle malpractice claims; and (3) Zuccari's liability as a party to the settlements themselves, in cases in which he was named as party. (*Id.* at 11.)

The Zuccari parties have failed to establish that Mr. Rosenthal's damage calculations will be irrelevant to identifying the apportionment of damages *if* the Zuccari parties are found liable on these obligations. His calculations analyze the payments that CFG allegedly made to

the Ark I, Ark II, and Lyric entities to facilitate the settlement of the professional liability lawsuits. In determining Zuccari's liability for the payments made by CFG, Mr. Rosenthal apportioned the payments based on Zuccari's ownership interest in the respective nursing home entities. (Rosenthal Report at 9-11, Exhibit 1.) He did so by reviewing and analyzing the financial records of these holding companies for a period of nearly four years, including the review of thousands of check register entries, hundreds of bank statements, thousands of pages containing email communication detailing the financial matters of the holding companies, and dozens of invoices for vendor services and legal services related to defending the nursing home entities. (*See* Rosenthal Report, Exhibit 1; Amended Rebuttal Rosenthal Report, Appendix D, Exhibit 3.) In addition, Mr. Rosenthal provided an explanation for the "cross-funding" that occurred between the various entities owned by Dwyer, Zuccari, and their respective LLCs. (*See* Rosenthal Report at 5-7, Exhibit 1; Amended Rebuttal Rosenthal Report at 13-14, Exhibit 3.)

Mr. Rosenthal's testimony is plainly relevant to the calculation of damages allegedly owed to CFG under an unjust enrichment theory. Indeed, this Court has previously deemed similar expert testimony relevant and admissible to an unjust enrichment claim in a bench trial, explaining that "the profit calculations may help the Court identify areas where [defendant's] own investments, rather than [plaintiff's] work, helped to generate" the subject payments. *See Klicos Painting Co., Inc. v. Saffo Contractors, Inc.*, Civil No. RDB-15-2505, 2018 WL 2435187, at *6 (D. Md. May 30, 2018). So too here, Mr. Rosenthal's damages calculation may aid the Court in determining which entities were responsible for the payments related to the nursing home

11

settlements. Moreover, as discussed below, there is no risk of unfair prejudice or misleading a jury as this case will proceed to a bench trial.

Mr. Rosenthal's testimony is also relevant to the calculation of any set-off that may result from the claims asserted in Civil Action Number RDB-19-3632, as he analyzed the damages allocable to AJZ Capital and determined that the damages sustained by CFG for payments on unfunded liabilities in Ark I, Ark II, and Lyric exceed the value of AJZ Capitals' interest in the sale of the Vero properties. (*See* Rosenthal Vero Report at 14-15, Exhibit 5.) Again, these calculations may help the Court in determining the appropriate damages award through a set-off if the both the Zuccari and the Dwyer parties are found liable on the claims asserted. However, the Court will not determine whether a set-off is appropriate until any such indebtedness is determined. *See Perring v. Baltimore Tr. Corp.*, 171 Md. 618, 190 A. 516, 519 (1937) ("A cardinal rule in the law of set-off is that there must be a mutuality of indebtedness between the parties. A debtor and creditor relation must exist between the parties as to both of the debts.").

Just as this Court did in *Klicos*, the Zuccari parties' Motion in Limine will be denied WITHOUT PREJUDICE, and they may challenge the relevancy of Mr. Rosenthal's opinions at trial. *See id.*

### II. Mr. Rosenthal's testimony satisfies the requirements of Federal Rule of Evidence 702, will not mislead the trier of fact, and is not fact testimony.

The crux of the Zuccari parties' challenge to Mr. Rosenthal's testimony is that he will not "help the trier of fact to understand the evidence or determine a fact in issue." *See* Fed. R. Evid. 702(a). They do not challenge the sufficiency of the facts or data upon which Mr.

12

Rosenthal relies nor do they challenge the reliability of Mr. Rosenthal's principles and methods and his application of those principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b), (c), (d). Their concern lies with the risk of confusing or misleading the jury to adopt Mr. Rosenthal's calculations simply because he is proffered as an expert. In light of the fact that the parties have now waived a jury trial and will proceed with a bench trial, this concern is much less significant with this Court sitting as the trier of fact. Indeed, as this Court has previously noted, "the gate keeping function of Rule 702 of the Federal Rules of Evidence carries less significance in a bench trial." *Bandy v. Amica Life Ins. Co.*, Civil Action No. AW-08-3055, 2010 WL 2292589, at *3 (D. Md. June 4, 2010); *see also Chicago Title Ins. CO. v. IMG Exeter Associates Ltd. P'ship*, 985 F.2d 553, at *4 (4th Cir. Feb. 8, 1993) (Table) (quoting *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (expert opinion "concerns are not present in a bench trial where the district court, as the trier of fact, is free to accept or reject the expert testimony").

Even so, this Court is satisfied at this juncture that Mr. Rosenthal is adequately qualified as an expert in forensic accounting. He has produced four detailed expert reports in these consolidated cases, which are the result of his reviewing and analyzing the financial records of the subject holding companies for a period of nearly four years, including the review of thousands of check register entries, hundreds of bank statements, thousands of pages containing email communication detailing the financial matters of the holding companies, and dozens of invoices for vendor services and legal services related to defending the nursing home entities. (*See* Rosenthal Report, Exhibit 1; Amended Rebuttal Rosenthal Report, Appendix D, Exhibit 3.) In addition, Mr. Rosenthal has provided an explanation for the "cross-funding"

that occurred between the various entities owned by Dwyer, Zuccari, and their respective LLCs. (*See* Rosenthal Report at 5-7, Exhibit 1; Amended Rebuttal Rosenthal Report at 13-14, Exhibit 3.) As such, his proposed testimony is not merely fact testimony as the Zuccari parties suggest. Rather, the testimony consists of technical opinions and financial analysis of how the Arkansas and Lyric entities functioned, which may be particularly helpful in this case where the parties have failed to memorialize much of their financial dealings.

In sum, the essence of the Zuccari parties' concerns over Mr. Rosenthal's testimony was that it could mislead or confuse a jury. This concern is no longer significant as the parties have chosen to proceed with a bench trial, and this Court will allow the Zuccari parties to challenge Mr. Rosenthal's opinions at trial. Accordingly, Alan Zuccari's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-1272 (ECF No. 203) and AJZ Capital, LLC's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-3632 (ECF No. 180) are DENIED WITHOUT PREJUDICE.

## CONCLUSION

For the reasons set forth above, Alan Zuccari's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-1272 (ECF No. 203) and AJZ Capital, LLC's Motion in Limine to Exclude Testimony of R. Christopher Rosenthal in Civil Action No. RDB-19-3632 (ECF No. 180) are DENIED WITHOUT PREJUDICE.

A separate Order follows.

Dated: April 9, 2021 _____/s/_____
Richard D. Bennett
United States District Judge